UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRAUER SUPPLY COMPANY 542(g) ASBESTOS PERSONAL INJURY TRUST,<br><br>      Plaintiff,<br><br>v.<br><br>ATLANTA INTERNATIONAL INS. CO., et al.,<br><br>      Defendants. | No. 4:09-CV-1640-JAR |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Strike Certain Portions of the Expert Report of Plaintiff's Expert Jeffrey W. Posner and to Preclude Posner from Testifying on Such Topics [ECF No. 112], and Defendants' Motion to Strike the Report of Plaintiff's Expert Edward Gabrielson, M.D. and to Preclude Gabrielson From Testifying [ECF No. 114]. The Motions have been fully briefed and are ready for disposition. For the following reasons, the Court will deny each Motion.

**Background**

This is a declaratory judgment action in which Plaintiff Brauer Supply Company 542(g) Asbestos Personal Injury Trust ("Brauer Supply") seeks to establish its entitlement to the proceeds of certain insurance policies issued by Defendants in connection with numerous underlying asbestos-related claims. Brauer Supply contends it is owed coverage under Defendants' policies because the underlying claimants allege they were injured during the time periods covered by those policies. Brauer Supply has identified Edward Gabrielson, M.D., as one

of its experts on asbestos-related injury, and Jeffrey M. Posner as one of its experts on allocation. Defendants move to strike and exclude the testimony of both Dr. Gabrielson and Mr. Posner on the grounds that neither expert can provide information on the individual underlying tort claims and that their opinions are based on assumptions and impermissible legal conclusions.

**Legal Standard**

The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702. Harrington v. Sunbeam Products, Inc., 2009 WL 701994, *1 (E.D.Mo., March 13, 2009)(citing Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir.2001)). Rule 702 provides that an expert may testify if the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the witness has applied the principles and methods reliably to the facts of the case. US Salt, Inc. v. Broken Arrow, Inc., 563 F.3d 687, 691 (8th Cir. 2009). "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony." Weisgram v. Marley Co., 169 F.3d 514, 523 (8th Cir.1999), aff'd, 528 U.S. 440 (2000). The Rule "favors admissibility if the testimony will assist the trier of fact." Clark ex rel. Clark v. Heidrick, 150 F.3d 912, 915 (8th Cir.1998). Doubt regarding "whether an expert's testimony will be useful should generally be resolved in favor of admissibility." Id. (citation and internal quotation omitted).

**Discussion**

**A.  Edward Gabrielson, M.D.**

Dr. Gabrielson has been retained to provide testimony on the progression of asbestos-related disease and specifically "the pathogenesis of asbestos-related diseases, specifically

asbestosis, non-malignant pleural disease, bronchogenic carcinoma, and mesothelioma." (Doc. No. 115-2 at ¶ 2). His opinions can be summarized as follows:

> A. Asbestos fibers, once deposited within tissue, repeatedly cause injuries at the cellular and molecular level.
>
> B. Asbestos injuries result in a variety of diseases, which occur at variable levels of severity.
>
> C. Diseases caused by asbestos are results of multiple and virtually continuous injuries which begin well before patients present with symptoms.
>
> D. All of the common forms of asbestos that have been used commercially in the U.S. are capable of contributing to the development of these diseases.

(Id. at ¶ 3).

In support of their motion to strike Dr. Gabrielson's report and exclude his testimony at trial, Defendants argue (1) his report presents a series of legal conclusions which impermissibly impinge on the Court's duty to rule on matters of law; and (2) his report lacks proper foundation because it is based on broad assumptions and speculation regarding how an individual may have been harmed through contact with Brauer Supply's products.

Brauer Supply responds that the testimony of Dr. Gabrielson is being offered not to prove that a particular plaintiff was exposed to asbestos-containing products distributed by Brauer Supply, but rather to rebut Defendants' contention that exposure to asbestos does not "trigger" their policies and that the Trust is seeking coverage for bodily injury that occurred outside the relevant policy periods. Brauer Supply states that Dr. Gabrielson's report establishes that exposure to asbestos fibers causes injury to the lungs continuously from inhalation through manifestation of the disease.

Expert testimony establishing and describing the progression of asbestos-related diseases is routinely accepted. See e.g., Breedlove v. CSX Transp., Inc. (In re Asbestos Prods. Liab. Litig.), 2011 WL 499993 (E.D. Pa. Feb. 10, 2011); Giordano v. A.C. & S Inc., 666 A.2d 710 (Pa.

3

Sup.Ct. 1995). Further, Dr. Gabrielson's opinions have been admitted in cases involving the long-term effects of exposure to asbestos. See Nat'l Union Fire Ins. Co. Of Pittsburgh, Pa. v. Porter Hayden Co., 331 B.R. 652 (D. Md. 2005); John Crane, Inc. v. Puller, 899 A.2d 879 (Md.Ct. Spec. App. 2006).

The Court finds, upon review of the record, that Dr. Gabrielson appears to have done nothing more than offer an expert opinion regarding the progression of asbestos-related diseases; he draws no conclusion regarding the appropriate trigger of insurance coverage herein. Given that the science underlying the pathology of asbestos-related diseases is outside the general knowledge of the lay juror, the Court finds Dr. Gabrielson's testimony may be of assistance to the jury in understanding the evidence in this case.

For these reasons, Defendants' Motion to Strike and Exclude the testimony and opinion of Dr. Gabrielson should be denied.

**B.  Jeffrey M. Posner**

Mr. Posner, an insurance and risk management professional, has been retained to provide an opinion based on the customs, practices and/or standards of the insurance industry on lost policy disputes between Brauer Supply and Continental Casualty Company ("CNA"), National Union Fire Insurance Company ("National Union"), and Pennsylvania General Insurance Company, f/k/a General Accident Insurance Company ("General Accident").  Mr. Posner has also been asked to perform an allocation of Brauer Supply's pre-bankruptcy liability of $10.8 million over the Brauer coverage block for the period April 1, 1974-September 1, 1991.

Defendants' Motion is directed to Mr. Posner's opinion and conclusion regarding allocation on the grounds that his opinion is based on unsupported legal conclusions and is not

demonstrably or sufficiently tied to the actual facts in this case. Defendants also request that if their Motion is not granted, they be allowed a reasonable extension of time in which to take Mr. Posner's deposition.[1]

The results of Mr. Posner's allocation are summarized on a chart entitled "Allocation Summary" and attached to his Expert Report. In performing his allocation, Mr. Posner relied on the following rules/assumptions:

> (i) the allocation was done on a pro-rata basis according to the number of years that had remaining coverage, which was ten;
>
> (ii) the allocation years were collapsed, when the policies in a given year were exhausted;
>
> (iii) initial exhaustion of certain policies was assumed based upon representations made by Gilbert LLP; and
>
> (iv) the underlying payments of $10.8 million resulted from claims that triggered all policy years in the coverage block.

(Exhibit B, p. 13, Doc. 113-2) Mr. Posner also relied on two documents, an Excel spreadsheet entitled "Redacted Summary of Liability" containing information on thousands of underlying claims against Brauer Supply, including settlement costs arising from each claim and the date of injury for each underlying claimant (Doc. No. 128-3), and a coverage chart attached to his Expert Report (Doc. No. 113-2, p.16).

Defendants object to the assumptions Mr. Posner has relied on in formulating his allocation opinion, on the grounds that he does not provide any explanation or support for those assumptions, by reference to either case law or the facts of the underlying claims.

---

[1] Pursuant to the Amended Case Management Order (Doc. No. 108), Brauer Supply's deadline for making its expert witnesses available for depositions was October 14, 2011, the day the instant Motions were filed.

Brauer Supply responds that Mr. Posner had extensive information regarding underlying claim file data and relied on that information in preparing his opinions regarding allocation. In its opposition to Defendants' Motions, Brauer Supply cites to portions of Mr. Posner's deposition taken in *TIG Ins. Co. v. The Brauer Supply Co. 524(g) Asbestos Personal Injury Trust*, St. Louis County Circuit Court Cause No. 09SL-CC00176, related to the same expert report submitted in the instant case. In *TIG*, Mr. Posner testified he was not asked to allocate individual claims; rather, his assignment was to allocate $10.8 million among the policies listed on the coverage chart that had coverage remaining (Id., 80:1-81:18). He also testified that the data and methodological assumptions he relied on were provided to him by counsel. (Id., 98:17-99:20). Brauer Supply further responds that while Mr. Posner was asked to perform an allocation analysis using a specific methodology, at no time did he render an opinion or take a position on whether the assumptions underlying that methodology were legally correct.

As a general rule, "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." Larson v. Kempker, 414 F.3d 936, 941 (8th Cir. 2005) (citing Hose v. Chicago Northwestern Transp. Co., 70 F.3d 968, 974 (8th Cir. 1995)); Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn., 356 F.3d 850, 858 (8th Cir. 2004) (citation omitted). Doubts regarding the admissibility of expert testimony should be resolved in favor of its admission. See Clark v. Heidrick, 150 F.3d 912, 914 (8th Cir. 1998). Also, the factual basis of an opinion may rest on certain assumptions. Permacel Automotive, Inc. v. Kohler Company, 2009 WL 3075568, *1 (W.D. Mo. September 23, 2009)(citing Synergetics, Inc. v. Hurst, 477 F.3d 949, 956 (8th Cir. 2006) and Frosty Treats, Inc. v. Sony Computer Entm't Am.,

Inc., 2004 WL 5500075, *3 (W.D. Mo. March 3, 2004)). Disagreement with the assumptions and methodology used does not warrant exclusion. Id.

After consideration of the record, the Court cannot conclude that Mr. Posner's opinion is "so fundamentally unsupported that it can offer no assistance to the jury." Archer Daniels Midland Co., 356 F.3d at 858. The Court will, therefore, deny Defendants' motion to strike Mr. Posner's opinion and testimony concerning allocation and grant Defendants' alternative request for an extension of time in which to take Mr. Posner's deposition.

For the foregoing reasons, Defendants' Motion to Strike Certain Portions of the Expert Report of Plaintiff's Expert Jeffrey W. Posner and to Preclude Posner from Testifying on Such Topics [ECF No. 112], and Defendants' Motion to Strike the Report of Plaintiff's Expert Edward Gabrielson, M.D. and to Preclude Gabrielson From Testifying [ECF No. 114] are **DENIED**.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Strike Certain Portions of the Expert Report of Plaintiff's Expert Jeffrey W. Posner and to Preclude Posner from Testifying on Such Topics [ECF No. 112] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants are granted an extension of time in which to depose Mr. Posner, up to and including February 6, 2012.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike the Report of Plaintiff's Expert Edward Gabrielson, M.D. and to Preclude Gabrielson From Testifying [ECF No. 114] is **DENIED**.

Dated this 6th day of January, 2012.

                                                           _____
                                                           JOHN A. ROSS
                                                           UNITED STATES DISTRICT JUDGE