# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| BRAUER SUPPLY COMPANY 542(g) ASBESTOS PERSONAL INJURY TRUST, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:09-CV-1640-JAR |
| ATLANTA INTERNATIONAL INS. CO., et al., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Exclude the Report and Testimony of Defendant's Expert Richard L. Thomas [ECF No. 141]. The Motion has been fully briefed and is ready for disposition. For the following reasons, the Court will grant the Motion.

**Background**

This is a declaratory judgment action in which Plaintiff Brauer Supply Company 542(g) Asbestos Personal Injury Trust ("Brauer") seeks to establish its entitlement to the proceeds of certain insurance policies issued by Defendants in connection with numerous underlying asbestos-related claims. Brauer contends it is owed coverage under Defendants' policies because the underlying claimants allege they were injured during the time periods covered by those policies. Defendants Atlanta International Insurance Company and Pennsylvania General Insurance Company ("Defendants") have identified Richard L. Thomas as one of its experts to offer his opinion on whether Brauer made material misrepresentations during the process of applying for insurance policies issued by Defendants. Plaintiff moves to exclude the report and

testimony of Mr. Thomas on the grounds that neither the existence of alleged misrepresentation nor the materiality thereof is a proper subject for expert testimony under Missouri law.

**Legal Standard**

The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702. Harrington v. Sunbeam Products, Inc., 2009 WL 701994, *1 (E.D.Mo., March 13, 2009)(citing Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir.2001)). Rule 702 provides that an expert may testify if the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the witness has applied the principles and methods reliably to the facts of the case. US Salt, Inc. v. Broken Arrow, Inc., 563 F.3d 687, 691 (8th Cir. 2009). "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony." Weisgram v. Marley Co., 169 F.3d 514, 523 (8th Cir.1999), aff'd, 528 U.S. 440 (2000). The Rule "favors admissibility if the testimony will assist the trier of fact." Clark v. Heidrick, 150 F.3d 912, 915 (8th Cir.1998). Doubt regarding "whether an expert's testimony will be useful should generally be resolved in favor of admissibility." Id. (citation and internal quotation omitted).

**Discussion**

Brauer does not appear to challenge Mr. Thomas' qualifications to give expert testimony in this case. As described by Defendants, Mr. Thomas has over forty years of experience in the insurance business as an underwriter, underwriting manager and underwriting executive.[1] Rather,

---

[1] Specifically, Mr. Thomas served as Chief Underwriting Officer for American International Group's ("AIG") domestic Brokerage Group (n/k/a Chartis) from 1999-2009. Chartis is a major insurance group, employing some 40,000 people and serving over 70 million clients world wide. (Expert Report of Richard L. Thomas, Doc. No. 144-2, pp.7-9)

Brauer seeks to exclude his testimony and expert report on the grounds that (1) as a matter of law, testimony regarding whether an insured made material misrepresentations during the insurance application process is not the proper subject of expert opinion, and (2) his opinion is irrelevant because it focuses on the wrong rescission standard.

Mr. Thomas has been retained to provide an opinion "regarding whether full and complete information was provided by Brauer Supply Company and its representatives to the underwriters of [Atlanta International Insurance Company and General Accident Insurance Company] to enable them to develop a comprehensive understanding of Brauer's operations, exposures to be insured and risk of loss." (Expert Report of Richard L. Thomas, Doc. No. 144-2, p. 2).

With respect to coverage placed with Defendant Atlanta International, Thomas was asked to address "whether the response to Question VI-A[2] in the application sent to Atlanta International is a misrepresentation." (Id., p. 3) It is Thomas' opinion that the response of "None" is false and misleading, since Brauer and its insurance broker Alexander & Alexander had knowledge of at least two claims with demands greater than $10,000 which they did not disclose. (Id.) Thomas was then asked whether that misrepresentation was material. In his opinion, "the action taken by the underwriter to offer coverage would have been materially different if the requested claims information had been provided. The underwriter was deprived of the opportunity to assess Brauer Supply's exposure to claims arising from products containing asbestos fiber sold by Brauer Supply. The underwriter was deprived of the opportunity to decline to offer coverage based on knowledge of the asbestos exposure or to offer coverage with an

---

[2] "Give details of all liability claims exceeding $10,000 made against the applicant, whether or not insured, during the past 5 years."

3

asbestos or products liability exclusion. In 1984, underwriters were fully aware of the health hazards associated to exposure to asbestos fibers." (Id.)

With respect to coverage placed with Defendant General Accident, Thomas was asked to address whether the responses to any or all of the following questions in the application sent to General Accident by Brauer's insurance broker were misrepresentations:

> • Page 1- General Information #6. "Any policy or coverage declined, cancelled or non-renewed during the prior three years?" The response "No" was checked.
>
> • Page 2 - Loss History - "Enter all claims or occurrences that may give rise to claims for the prior 5 years." The response is "See Attached Loss Summary." The exhibit attached contains one Liability Loss which occurred 9/18/1985 arising from damage to two vehicles.
>
> • Commercial General Liability Section - Products/Completed Operations #6. "Products recoiled, discontinued, changed?" The response "No" was checked.

(Id., p. 4)

With respect to the first question regarding policies or coverages declined, cancelled or non-renewed in the past three years, it was Thomas' opinion that Brauer's response was false and misleading since The Hartford had refused to renew coverage in June and August of 1985, LJSF&G had refused to renew coverage in August of 1986, and Chubb had declined to write Directors & Officers Liability coverage in December of 1985. (Id.)

With respect to the second question regarding all claims and occurrences for the prior five years, it was Thomas' opinion that Brauer's response was incomplete and misleading, since the Geolat claim was open during the period March of 1983 to January of 1987. (Id.)

With respect to the third question regarding products recalled, discontinued, changed, it was Thomas' opinion that Brauer's response was false and misleading since Brauer and its

4

insurance brokers were well aware that Brauer had sold products containing asbestos and discontinued the sale of those products. (Id., p. 5)

Thomas was then asked whether those misrepresentations were material. With respect to the issue of declination, cancellation or non-renewal, it was Thomas' opinion that Brauer's false response was material. "[I]f the underwriter had knowledge of these actions by Brauer's other insurers or prospective insurer, the underwriter would have inquired to learn the underlying reasons for these non-renewals and declination to offer coverage. Without the knowledge of Brauer's prior sale of asbestos products, the underwriter was deprived of a full and complete understanding of Brauer's potential exposure to loss." (Id.)

With respect to the issue of loss history, it was Thomas' opinion that the omission of the Geolat claim was material, and that "the underwriter was deprived of full and complete information upon which to make a sound decision consistent with GA's underwriting guidelines prior to committing GA to the Brauer risk." (Id.)

Finally, with respect to the question regarding discontinued products, it was Thomas' opinion that the failure to disclose the discontinued sale of insulation containing asbestos was materia and that "the underwriter was deprived of full and complete information upon which to make a sound decision consistent with GA's underwriting guidelines prior to committing GA to the Brauer risk." (Id.)

In support of their motion, Brauer argues that because Thomas employs no specialized knowledge or analysis to reach his conclusion that representations made by Brauer in its coverage application were "false and misleading," his testimony would not assist the jury as required by Rule 702. Hill v. Equitable Bank, Nat'l Ass'n, 1987 WL 8953, at *2 (D.Del. March

5

3, 1987). Also, because the standard for "materiality" "is whether a reasonable person should have expected that the misrepresentation within the insurance application would influence the insurance company's decision to accept the risk and issue the policy," Employers Fire Ins. Co. v. Power Model Supply Co., 279 F.Supp.2d 1060, 1066-67 (E.D. Mo. 2003)(citing Cent. Bank of Lake of the Ozarks v. First Marine Ins. Co., 975 S.W.2d 222, 225 (Mo.App. W.D. 1998), "the determination of what effect a particular fact would have on the action of a reasonable man is generally a question of fact for the jury." Hill, 1987 WL 8953, at *1.

Defendants respond that the test for materiality depends on whether a "reasonable insurer acting in accordance with industry practices" would have been influenced by the insured's representations. See e.g. Adams v. Columbia Mut. Ins. Co., 978 S.W.2d 10, 11 (Mo.App. W.D. 1998); Crewse v. Shelter Mut. Ins. Co., 706 S.W.2d 35, 39 (Mo.App. W.D. 1985). Therefore, an underwriting expert's testimony regarding industry practices is directly relevant to whether an insured made material misrepresentations and can assist a jury. See e.g. Cedar Hill Hardware & Constr. Supply Inc. v. Insurance Corporation of Hanover, 563 F.3d 329, 337, 343-44 (8th Cir. 2009); Meeker v. Shelter Mut. Ins. Co., 766 S.W.2d 733, 740 (Mo.App S.D..1989) ("Industry custom and practice [are] relevant to the issue of whether misrepresentations in an application for insurance are material."); Galvan v. Cameron Mutual Ins., 733 S.W.2d 771, 773 (Mo.App. E.D. 1987)(Industry custom may be considered in applying the test of materiality to a representation made when applying for insurance).

Clearly, expert testimony as to the customs and practices of the insurance industry is sufficiently helpful to the trier of fact under Rule 702 to be admissible. That being said, Mr. Thomas' report does not address insurance industry practices or underwriting guidelines. He

employs no specialized knowledge to reach his conclusions, and merely tells the jury what result to reach with regard to the alleged misrepresentations. As noted above, a district court has broad discretion to determine the admissibility of evidence. That discretion is narrowed, however, when a party seeks to admit expert testimony which effectively tells the jury what result to reach. Kostelecky v. NL Acme Tool/NL Indus., 837 F.2d 828, 830 (8th Cir. 1988). Furthermore, while Defendants maintain that a "reasonable insurer" standard controls the determination of materiality in the insurance context, Mr. Thomas' report does not address how a reasonable insurer would act in similar circumstances. As argued by Brauer, Mr. Thomas is simply comparing the information provided in the application with facts he claims are inconsistent - a task that could and should be performed by the jury. His testimony is "superfluous" in that it does not assist the trier of fact as required by Rule 702. Hill, 1987 WL 8953, at *2.

Defendants request leave for Mr. Thomas to amend his expert report should the Court find it deficient. Pursuant to the Case Management Order and subsequent amendments thereto, the time for disclosure of expert witnesses and expert reports as required by Rule 26(a)(2) has past and depositions of the parties' experts is underway. Further, this case has been pending in this Court since October 2009 and is currently set for jury trial on September 10, 2012. Defendants' request will be denied.

**Conclusion**

For the foregoing reasons, Brauer's motion to exclude the report and testimony of Mr. Thomas will be granted.

Accordingly,

7

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Exclude the Report and Testimony of Defendant's Expert Richard L. Thomas [ECF No. 141] is **GRANTED**.

Dated this 3rd day of April, 2012.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE